1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL J.,[1] | Case No. 2:19-cv-07349-JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| ANDREW SAUL, Commissioner of Social Security Administration, | |
| Defendant. | |

## I.   SUMMARY

On August 23, 2019, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively "Plaintiff's Motion" and "Defendant's Motion" (collectively "Motions").  The Court has taken the Motions under submission

_____

[1]Plaintiff's name is partially redacted to protect her privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On January 27, 2016, plaintiff filed an application for Disability Insurance Benefits, alleging disability beginning on May 18, 2014, due to neck and back pain, migraines, and "[l]ack of focus due to chronic head pain."  (Administrative Record ("AR") 299-304, 316).  The ALJ subsequently examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert.  (AR 94-120).

On June 18, 2018, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 81-90).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  spinal and shoulder disorders per MRI testing, depression, and a history of meningitis with related headaches and pain affecting the neck, back and shoulders (AR 83); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 84); (3) plaintiff retained the following residual functional capacity:

> [Plaintiff can] lift, carry, push and pull 20 pounds occasionally and 10
> pounds frequently; she can stand and/or walk for 6 hours in an 8 hour
> day and sit for 6 hours in an 8 hour day; she can frequently climb
> ladders, ropes, scaffolds, ramps and stairs; she can frequently balance,
> stoop, kneel, crouch and crawl and she is limited to occasional
> overhead reaching with the left upper extremity and right upper

///

1  extremity[;] [m]entally, [plaintiff] is limited to unskilled work and is
2  precluded from fast paced work.

3  (AR 85); (4) plaintiff could not perform any past relevant work (AR 88); (5) there

4  are jobs that exist in significant numbers in the national economy that plaintiff

5  could perform, specifically marker, cafeteria attendant, and sales attendant (AR

6  89-90); and (6) plaintiff's statements regarding the intensity, persistence, and

7  limiting effects of subjective symptoms were not entirely consistent with the

8  medical evidence and other evidence in the record (AR 88).

9       On June 20, 2019, the Appeals Council denied plaintiff's application for

10  review.  (AR 1-3).

11  **III.   APPLICABLE LEGAL STANDARDS**

12       **A.   Administrative Evaluation of Disability Claims**

13       To qualify for disability benefits, a claimant must show that she is unable

14  "to engage in any substantial gainful activity by reason of any medically

15  determinable physical or mental impairment which can be expected to result in

16  death or which has lasted or can be expected to last for a continuous period of not

17  less than 12 months."  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)

18  (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted); 20 C.F.R.

19  §§ 404.1505(a), 416.905.  To be considered disabled, a claimant must have an

20  impairment of such severity that she is incapable of performing work the claimant

21  previously performed ("past relevant work") as well as any other "work which

22  exists in the national economy."  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.

23  1999) (citing 42 U.S.C. § 423(d)).

24       To assess whether a claimant is disabled, an ALJ is required to use the five-

25  step sequential evaluation process set forth in Social Security regulations.  See

26  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)

27  (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520,

28  416.920).  The claimant has the burden of proof at steps one through four – i.e.,

3

1  determination of whether the claimant was engaging in substantial gainful activity

2  (step 1), has a sufficiently severe impairment (step 2), has an impairment or

3  combination of impairments that meets or medically equals one of the conditions

4  listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and

5  retains the residual functional capacity to perform past relevant work (step 4).

6  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The

7  Commissioner has the burden of proof at step five – *i.e.*, establishing that the

8  claimant could perform other work in the national economy. Id.

9  **B.     Federal Court Review of Social Security Disability Decisions**

10  A federal court may set aside a denial of benefits only when the

11  Commissioner's "final decision" was "based on legal error or not supported by

12  substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871

13  F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The

14  standard of review in disability cases is "highly deferential." Rounds v. Comm'r

15  of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation

16  marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could

17  reasonably support either affirming or reversing the decision.  Trevizo, 871 F.3d at

18  674-75 (citations omitted).  Even when an ALJ's decision contains error, it must

19  be affirmed if the error was harmless.  See Treichler v. Comm'r of Soc. Sec.

20  Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if

21  (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path

22  may reasonably be discerned despite the error) (citation and quotation marks

23  omitted).

24  Substantial evidence is "such relevant evidence as a reasonable mind might

25  accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining

26  "substantial evidence" as "more than a mere scintilla, but less than a

27  preponderance") (citation and quotation marks omitted).  When determining

28  whether substantial evidence supports an ALJ's finding, a court "must consider the

4

1  entire record as a whole, weighing both the evidence that supports and the
2  evidence that detracts from the Commissioner's conclusion[.]"  Garrison v.
3  Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).
4        Federal courts review only the reasoning the ALJ provided, and may not
5  affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."
6  Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need
7  not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's
8  reasoning "in a way that allows for meaningful review."  Brown-Hunter v. Colvin,
9  806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).
10        A reviewing court may not conclude that an error was harmless based on
11  independent findings gleaned from the administrative record.  Brown-Hunter, 806
12  F.3d at 492 (citations omitted).  When a reviewing court cannot confidently
13  conclude that an error was harmless, a remand for additional investigation or
14  explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173
15  (9th Cir. 2015) (citations omitted).
16  **IV.    DISCUSSION**
17        Plaintiff argues that the ALJ erred (1) in assessing her mental impairments
18  in the residual functional capacity ("RFC") finding and (2) in discrediting her
19  testimony regarding her symptoms and limitations.  (Plaintiff's Motion at 5-14).
20  For the reasons discussed below, plaintiff has not shown that a reversal or remand
21  is required on either of these grounds.
22        **A.    Substantial Evidence Supports the ALJ's Assessment of**
23              **Plaintiff's Mental Impairments**
24              **1.    Pertinent Law**
25        Before proceeding to steps four and five, an ALJ must first assess the
26  claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Ruling
27  ///
28  ///

5

1   ("SSR") 96-8P at *1.[2]   The RFC represents "the most [a claimant] can still do

2   despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3   When assessing RFC, an ALJ must evaluate "on a function-by-function basis"

4   how particular impairments affect a claimant's abilities to perform basic physical,

5   mental, or other work-related functions.  SSR 96-8P at *1 (citing 20 C.F.R.

6   §§ 404.1545(b)-(d), 416.945(b)-(d)).  An ALJ must account for limitations caused

7   by all of a claimant's impairments, even those that are "not severe."  SSR 96-8P at

8   *5 (internal quotation marks omitted).  In addition, an ALJ must consider all

9   relevant evidence in the record, including medical records, lay evidence, and the

10   effects of a claimant's subjective symptoms (*i.e.*, pain), that may reasonably be

11   attributed to a medically determinable impairment.  Robbins v. Soc. Sec. Admin.,

12   466 F.3d 880, 883 (9th Cir. 2006) (citations omitted); see 20 C.F.R.

13   §§ 404.1545(a)(1), 416.945(a)(1).

14       ALJs have an "independent duty" to help claimants "fully and fairly develop

15   the record" at every step of the sequential evaluation process.  Tonapetyan v.

16   Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotation

17   marks omitted).  An ALJ may satisfy this duty, in part, by ordering a consultative

18   examination, but the ALJ has "broad latitude in deciding whether to do so.  See

19   Reed v. Massanari, 270 F.3d 838, 841-42 (9th Cir. 2001) (citations omitted).  An

20   ALJ's duty to develop the record further is triggered only when the existing

21   administrative record contains "ambiguous evidence" or is "inadequate to allow

22   for proper evaluation of the [medical] evidence."  McLeod v. Astrue, 640 F.3d

23   _____

24       [2]Social Security Rulings reflect the Social Security Administration's ("SSA") official
    interpretation of pertinent statutes, regulations, and policies.  20 C.F.R. § 402.35(b)(1).  Although

25   they "do not carry the 'force of law,'" Social Security Rulings "are binding on all components of
    the . . . Administration[,]" and are entitled to deference if they are "consistent with the Social

26   Security Act and regulations."  20 C.F.R. § 402.35(b)(1); Bray v. Comm'r of Soc. Sec. Admin.,

27   554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted); see also Heckler v.
    Edwards, 465 U.S. 870, 873 n.3 (1984) (discussing weight and function of Social Security

28   rulings).

881, 885 (9th Cir. 2011) (citation omitted); see also 20 C.F.R. § 404.1519a(b)
(ALJ may order consultative examination "to try to resolve an inconsistency in the
evidence, or when the evidence as a whole is insufficient to [ALJ] to make a
determination or decision on [] claim").

## 2.   ALJ's Findings

The ALJ found, at step two, that plaintiff's depression is a severe
impairment. (AR 83). In assessing whether plaintiff met the criteria for any listed
impairments, the ALJ determined that plaintiff's mental impairments limited her to
(1) "a moderate restriction in understanding, remembering, or applying
information"; (2) "no limitation related to interacting with others"; (3) "a moderate
limitation with regard to concentrating, persisting, or maintaining pace"; and
(4) "a moderate limitation related to adapting or managing oneself." (AR 84-85).

When assessing plaintiff's RFC, the ALJ noted that the record reflects
diagnosis and treatment for depression during the relevant period, but found that
the treatment record was "scant" with respect to this condition. (AR 87). The ALJ
observed that plaintiff "attended biweekly therapy sessions from August 24, 2016
through April 2018." (AR 87) (citing AR 946). The ALJ noted mental health
treatment records from March 2018 reflecting a diagnosis of "major depressive
disorder, recurrent, moderate" and an "improved mood" with medication
(Zyprexa). (AR 87) (citing AR 818). The ALJ also noted that a mental status
examination on October 26, 2017, revealed "a depressed and anxious mood, a
constricted affect, avoidant eye contact and slowed activity," but the ALJ
determined that the examination findings were "otherwise unremarkable and
showed a logical thought process, a normal thought content, normal cognition, and
normal insight and judgment." (AR 87-88) (citing AR 836). The ALJ also took
into account the assessment of plaintiff's pain management specialist, Dr.
Salvatore Danna, that plaintiff's pain prevents her from engaging in work that
requires "mental agility." (AR 88; see AR 525).

7

Overall, the ALJ determined "that the combination of [plaintiff's] pain and depressive conditions reasonably impose mental restrictions precluding the performance of detailed, complex work and fast paced work," but there was no medical evidence that "would indicate an inability to perform unskilled work that is not at a fast pace." (AR 88). Thus, in assessing plaintiff's mental RFC, the ALJ found only that plaintiff "is limited to unskilled work and is precluded from fast-paced work." (AR 85).

### 3. Analysis

Plaintiff contends that the ALJ impermissibly "relied on [his] own lay understanding to interpret the medical records and examination results to assess the seriousness of [plaintiff's] mental limitations in functional terms," and the ALJ "should have more fully and fairly developed the ambiguous record in this case," by ordering consultative examinations. (Plaintiff's Motion at 6-8). Plaintiff additionally disputes the ALJ's review of the evidence regarding her mental impairments and mental health treatment, including the ALJ's reference to her "improved mood" in one treatment note from March 9, 2018. (Id. at 7). Plaintiff contends that this same treatment note also reflects plaintiff's reports that she was "feeling down, depressed or hopeless, and had little interest or pleasure in doing things at the time." (Id.) (citing AR 816, 818). Plaintiff points, as well, to records showing that, in November 2016, she "presented with inappropriate mood affect" (see AR 598); in December 2016, she "disclosed auditory hallucinations of hearing two men plotting to kill her" (see AR 697); in February 2017, she "presented with anxious and irritable mood and constricted affect," her "posture was tense, eye contact was intense, and activity was slowed," and her " attitude towards the examiner was evasive/anxious and demanding" (see AR 675); in April 2017, she "presented with depressed mood and tearful affect" (see AR 651); in June 2017, she "presented with tense posture, avoided eye contact, anxious mood and constricted affect," and she "reported auditory hallucination and paranoid

8

1  thought content" (see AR 618); and in October 2017, she presented with depressed
2  and anxious mood, constricted affect, tense posture, avoidant eye contact, and
3  slowed activity, and was described as evasive and anxious toward the examiner
4  (see AR 836).  (Plaintiff's Motion at 7).

5         Notwithstanding these contentions, substantial evidence supports the ALJ's
6  assessment of plaintiff's mental RFC limiting plaintiff to unskilled, non-fast-paced
7  work.  (AR 85).  At the time of the decision, plaintiff had been receiving mental
8  health treatment for less than two years, beginning on August 24, 2016, and the
9  record reflects that she experienced some improvement during that time.  (See AR
10 818, 946).  At the hearing, plaintiff testified that her symptoms had improved with
11 treatment, though she stated that it is "still hard," as she "still sometimes"
12 experiences symptoms of paranoia, causing her to "look over [her] shoulder."  (AR
13 112-13).  Plaintiff did not testify that any symptoms from her mental conditions
14 significantly limit her ability to function.  While plaintiff contends, here, that her
15 medical records have continued to document symptoms such as anxious mood,
16 constricted affect, and reports of paranoid episodes, the ALJ appropriately
17 acknowledged such evidence, while also accurately noting plaintiff's generally
18 normal mental status examination findings, as reflected in numerous records,
19 including logical thought process, normal thought content, normal cognition, and
20 normal insight and judgment.  (AR 87-88; see AR 736, 740, 748, 753, 758, 764,
21 836).

22        The evidence in the record does not indicate any significant limitation in
23 mental functioning beyond what the ALJ assessed in the mental RFC.  Moreover,
24 plaintiff has failed to demonstrate that the evidence in the record was ambiguous
25 or otherwise inadequate to support the ALJ's evaluation of plaintiff's mental
26 limitations.  Accordingly, substantial evidence supports the ALJ's mental RFC
27 determination, and the ALJ had no duty to develop the record further.
28 ///

1

2

**B.   The ALJ Did Not Err in Discrediting Plaintiff's Testimony**

**1.   Pertinent Law**

3  When determining disability, an ALJ is required to consider a claimant's

4  impairment-related pain and other subjective symptoms at each step of the

5  sequential evaluation process.  20 C.F.R. §§ 404.1529(a), (d).  Accordingly, when

6  a claimant presents "objective medical evidence of an underlying impairment

7  which might reasonably produce the pain or other symptoms [the claimant]

8  alleged," the ALJ is required to determine the extent to which the claimant's

9  statements regarding the intensity, persistence, and limiting effects of his or her

10  subjective symptoms ("subjective statements" or "subjective complaints") are

11  consistent with the record evidence as a whole and, consequently, whether any of

12  the individual's symptom-related functional limitations and restrictions are likely

13  to reduce the claimant's capacity to perform work-related activities.  20 C.F.R.

14  §§ 404.1529(a), (c)(4); SSR 16-3p, 2017 WL 5180304, at *4-10.[3]  When an

15  individual's subjective statements are inconsistent with other evidence in the

16  record, an ALJ may give less weight to such statements and, in turn, find that the

17  individual's symptoms are less likely to reduce the claimant's capacity to perform

18  work-related activities.  See SSR 16-3p, 2017 WL 5180304, at *8.  In such cases,

19  when there is no affirmative finding of malingering, an ALJ may "reject" or give

20  less weight to the individual's subjective statements "only by providing specific,

21

22

23

24

25

26

27

28

[3]Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation."  See SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11.  The SSA subsequently republished SSR 16-3p making no change to the substantive policy interpretation regarding evaluation of a claimant's subjective complaints, but clarifying that the SSA would apply SSR 16-3p only "[when making] determinations and decisions on or after March 28, 2016[,]" and that federal courts should apply "the rules [regarding subjective symptom evaluation] that were in effect at the time" an ALJ's decision being reviewed became final.  SSR 16-3p, 2017 WL 5180304, at *1, *13 n.27.

1  clear, and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89.[4]

2  This requirement is very difficult to satisfy.  See Trevizo, 871 F.3d at 678 ("The

3  clear and convincing standard is the most demanding required in Social Security

4  cases.") (citation and quotation marks omitted).

5        An ALJ's decision "must contain specific reasons" supported by substantial

6  evidence in the record for giving less weight to a claimant's statements.  SSR 16-

7  3p, 2017 WL 5180304, at *10.  An ALJ must clearly identify each subjective

8  statement being rejected and the particular evidence in the record which

9  purportedly undermines the statement.  Treichler, 775 F.3d at 1103 (citation

10  omitted).  Unless there is affirmative evidence of malingering, the Commissioner's

11  reasons for rejecting a claimant's testimony must be "clear and convincing."

12  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (internal quotation marks

13  omitted), as amended (Apr. 9, 1996). "General findings are insufficient[.]"

14  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

15        If an ALJ's evaluation of a claimant's statements is reasonable and is

16  supported by substantial evidence, it is not the court's role to second-guess it.  See

17  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).  When

18  an ALJ fails properly to discuss a claimant's subjective complaints, however, the

19  error may not be considered harmless "unless [the Court] can confidently conclude

20  that no reasonable ALJ, when fully crediting the testimony, could have reached a

21  different disability determination." Stout, 454 F.3d at 1056; see also Brown-

22  Hunter, 806 F.3d at 492 (ALJ's erroneous failure to specify reasons for rejecting

23  claimant testimony "will usually not be harmless").

24

25

26      [4]It appears to this Court, based upon its research of the origins of the requirement that
there be "specific, clear and convincing" reasons to reject or give less weight to an individual's
27  subjective statements absent an affirmative finding of malingering, that such standard of proof
remains applicable even when SSR 16-3p governs.  See Trevizo, 871 F.3d at 678-79 & n.5
28  (citations omitted).

### 2.    Plaintiff's Statements and Testimony

On March 28, 2016, plaintiff completed a Headache Questionnaire stating the following:  She suffered constant headaches on a daily basis, described as a sharp, stabbing pain accompanied by pressure, all over her head, making it difficult to move or focus.  (AR 325-26).  The pain increases with "any body movement," talking or loud noises, heat, and stress.  (AR 325-26).  To alleviate it, she takes pain medication and lies down for hours with bags of ice on her head, which enables her "to get up and move for a short time" (AR 325).  The medications have helped reduce the pain, "but nothing takes the pain away completely."  (AR 327).

At the hearing on May 24, 2018, plaintiff testified to the following: She last worked in May 2014, when she was hospitalized with viral meningitis, and was "bedridden" for "a long time" after.  (AR 102-03).  The condition caused plaintiff's headaches, back pain, and neck pain, and "the pain never stopped." (AR 102-04, 114).  Plaintiff now "feels like [she] can't live [her] life."  (AR 104). She experiences "very bad migraines constantly during the day," that on some days feel like she is being kicked all over her head.  (AR 107-08).  Doctors have told her that surgery is not an option, and have recommended physical therapy. (AR 114).  She went to physical therapy twice a week for "a couple weeks," but had not gone for "over a month."  (AR 116).  The physical therapy included massages, which help "for the moment" to "relieve that tension," but "exercises flare it up."  (AR 114).  She has also been experiencing anxiety and paranoia for a little over a year, for which she has been taking medication and seeing a counselor every two weeks.  (AR 111-12).  These symptoms have improved with treatment. (AR 112-13).

Plaintiff further testified:  She lives with her elderly father and two children (ages 16 and 22).  (AR 99).  She is "pretty much at home all the time."  (AR 102). When she awakes in the morning, she is "good for maybe three hours" of activity.

1   (AR 100).  She drops her daughter off at school, runs the dishwasher, has a bowl

2   of cereal, and then must lie down and ice her head.  (AR 100).  She basically lies

3   down in bed for the rest of the day, watching television, and then gets up for

4   dinner.  (AR 100-01, 105-06).  She gets up on some days to pick her daughter up

5   from school.  (AR 100-01).

6          She additionally testified:  She can sit for only a half hour, and stand for

7   "less than a minute" before her back starts hurting.  (AR 101-02).  She cannot

8   walk for "very long."  (AR 106). She can lift a couple of pounds, but not ten

9   pounds.  (AR 106-07).  She does the laundry with her daughter, and she cooks

10   meals, sometimes with the help of her daughter or her son's girlfriend.  (AR 104-

11   05).  She shops for groceries, drives her father to doctors' appointments about

12   twice a month, and drives herself to appointments about once a week, sometimes

13   more, though it "hurts" to do so.  (AR 99, 101, 105).  When she shops, "the people

14   at the store help [her] to get milk or anything else," and her children carry the

15   groceries inside when she gets home.  (AR 106).

16                     **3.   ALJ's Findings**

17          The ALJ found that plaintiff's "medically determinable impairments could

18   reasonably be expected to cause symptoms," but determined that her "statements

19   concerning the intensity, persistence and limiting effects of these symptoms" were

20   "not entirely consistent with the medical evidence and other evidence in the record

21   for the reasons explained in th[e] decision."  (AR 88).  The ALJ found that

22   plaintiff's allegations of constant, daily, debilitating pain and "markedly limited

23   functioning" were inconsistent with the treatment and consultative examination

24   records, as well as the objective findings and treatment records, which "show

25   improvement of pain with treatment," according to the ALJ.  (AR 88).  The ALJ

26   noted, for example, a treatment record from May 28, 2015, indicating that

27   plaintiff's reported that she felt "generally well," that her treatment with Dr. Danna

28   had resulted in "better control" of pain symptoms, and that she experienced a

1   "large decrease in pain" following osteopathic manipulative treatment.  (AR 86)

2   (citing AR 445).  The ALJ also noted a record from September 14, 2017,

3   indicating that plaintiff's "pain ha[d] improved," and a record on December 11,

4   2017, reflecting that plaintiff was "doing well." (AR 86-87) (citing AR 828 (Dec.),

5   838 (Sept.)).  In addition, the ALJ pointed to "multiple" occasions in the treatment

6   records where plaintiff's pain was assessed as a 0 out of 10.  (AR 86) (citing AR

7   807, 816, 836, 843, 874).  The ALJ also took into account that Dr. Danna had

8   remarked that plaintiff could perform housework and light chores.  (AR 86, 88)

9   (citing AR 525).  The ALJ found, moreover, that plaintiff's claim of disability was

10  inconsistent with her failure to follow up with physical therapy treatment, despite

11  showing some improvement.  (AR 87) (citing AR 944).

12         The ALJ also reviewed a consultative internal medical evaluation by Dr. Jay

13  Dhiman, which revealed "hypertrophy of the nasal turbinates and tenderness of the

14  occipital nerves consistent with occipital neuralgia," as well as "muscle spasm and

15  tenderness of the paracervical and trapezius muscles," but it also showed "no

16  cervical radicular signs or symptoms," along with a normal gait, normal

17  coordination, intact sensation and motor function, and normal range of motion in

18  the shoulder and lumbar and cervical spine.  (AR 87) (citing AR 498-503).

19                      **4.    Analysis**

20         Upon review of the record, the Court concludes that the ALJ provided

21  specific, clear and convincing, legitimate reasons to discount plaintiff's

22  allegations, based on inconsistencies with the treatment records, objective

23  examinations, and daily activities, along with plaintiff's failure to follow up with

24  prescribed treatment.  These findings are supported by substantial evidence in the

25  record.

26         Plaintiff disputes the ALJ's finding that her symptoms improved with

27  treatment.  (Plaintiff's Motion at 11).  She contends that the ALJ failed to consider

28  the records in context.  (Id. at 11-12).  Plaintiff notes, for example, that when a

1    treatment record described her as doing "generally well," on May 28, 2015, she

2    had been prescribed powerful medications, including fentanyl, Percocet, and

3    sumatriptan.  (Id. at 11) (citing AR 86, 445).  Plaintiff also points out that despite

4    Dr. Danna's report of improvement with treatment on September 14, 2015,

5    plaintiff continued to suffer from headaches and appeared with "disuse atrophy

6    and deconditioning."  (Id. at 12) (quoting AR 518).  When Dr. Danna observed

7    plaintiff's improvement on April 28, 2017, the doctor also noted that plaintiff

8    presented as "a weakened and pallored individual" who continued to experience

9    muscle strain, spasms of cervical spine with tension, and traction cephalgia.  (Id.)

10   (quoting AR 507).  Similarly, plaintiff disputes the ALJ's reliance on records

11   rating plaintiff's pain as a 0 out of 10 because, plaintiff contends, "other records

12   during the same period showed [plaintiff] complaining of headaches to various

13   providers."  (Id. at 13) (citing AR 838, 913, 937).  Plaintiff asserts that the record,

14   as a whole, "demonstrates ongoing complaints of headaches not inconsistent with

15   [plaintiff's] testimony."  (Id.).

16        Notwithstanding these contentions, plaintiff fails to show that the ALJ

17   overlooked material evidence or otherwise erred in considering the medical

18   treatment records when evaluating plaintiff's symptom testimony.  Plaintiff

19   testified that her pain was daily, constant and unremitting.  (See AR 107, 325,

20   327).  Thus, even if the records reflect that there was still pain on some days, the

21   ALJ reasonably found that plaintiff's allegations were inconsistent with the record

22   overall, which indicated at least periodic improvement and relief from pain.  See,

23   e.g., Bailey v. Colvin, 659 F. App'x 413, 415 (9th Cir. 2016) (evidence that

24   "impairments had been alleviated by effective medical treatment," to the extent

25   inconsistent with "alleged total disability[,]" specific, clear, and convincing reason

26   for discounting subjective complaints) (citing Warre v. Comm'r of Soc. Sec

27   Admin, 439 F.3d 1001, 1006 (9th Cir. 2006)).

28   ///

15

1         Plaintiff contends that the ALJ improperly relied on her activities of daily

2   living to reject her testimony.  (Plaintiff's Motion at 13).  She argues that the ALJ

3   inaccurately characterized her testimony "as describing a bedridden individual,"

4   despite that she testified to performing some light housework and chores.  (Id. at

5   12-13).  Plaintiff asserts that the ALJ thereby "attempt[ed] to manufacture an

6   inconsistency between [plaintiff's] testimony and the medical records" by

7   distorting plaintiff's account of her daily activities.  (Id. at 12).

8         However, even if plaintiff did not claim to be entirely bedridden, the ALJ

9   accurately observed that plaintiff "testified that she basically was homebound and

10  performed minimal activities due to headaches."  (AR 86).  Plaintiff testified that

11  she was "pretty much at home all the time" (AR 102), and that she could manage

12  only about three hours of activity in the morning, during which she drops her

13  daughter at school, runs the dishwasher "if [she is] able," and has a bowl of cereal

14  (AR 100).  After that, according to plaintiff, she lies down in bed "for the rest of

15  the day."  (AR 100-01).  She also stated that she can sit for only a half hour, and

16  stand for "less than a minute" before her back starts hurting.  (AR 101-02).

17  Despite this, upon questioning, plaintiff also acknowledged that she prepares

18  meals, does laundry with her daughter, shops for groceries, drives herself and her

19  father to doctors' appointments, and picks her daughter up from school.  (AR 101,

20  104-05).  The extent of these activities undermines plaintiff's claim that she could

21  basically only function, in a very limited fashion, for about three hours in the

22  morning, and must spend the rest of the time in bed due to severe, constant pain.

23  The record thus supports the ALJ's impression that plaintiff was capable of more

24  activity than many of her statements suggested, and she seemed to downplay the

25  extent of her activities and abilities.  See Reddick, 157 F.3d at 722 (ALJ may

26  consider daily activities to extent plaintiff's "level of activity [is] inconsistent with

27  [the] . . . claimed limitations"); cf. Molina, 674 F.3d at 1113 ("Even where

28  [claimant's] activities suggest some difficulty functioning, they may be grounds

16

1    for [giving less weight to] the claimant's testimony to the extent that they
2    contradict claims of a totally debilitating impairment.") (citations omitted); see,
3    e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (claimant's ability to
4    "take care of her personal needs, prepare easy meals, do light housework and shop
5    for some groceries . . . may be seen as inconsistent with the presence of a
6    condition which would preclude all work activity") (citing Fair v. Bowen, 885
7    F.2d 597, 604 (9th Cir. 1989)).

8        Plaintiff argues that the ALJ improperly relied on her failure to follow up
9    with physical therapy treatment. (Plaintiff's Motion at 13). Plaintiff contends that
10   there was "a good reason for the noncompliance" here because physical therapy
11   was not helpful. (Id.). She points to her testimony that physical therapy made her
12   symptoms flare up. (Id.) (citing AR 114, 116). She also asserts that when she
13   "tried physical therapy in the past," Dr. Danna noted in November 2016 that it was
14   not helpful, and worsened plaintiff's neck and back pain. (Id.) (citing AR 511).

15       However, plaintiff's physical therapist did in fact remark that plaintiff "had
16   made slight improvements," after just six sessions in November and December
17   2017. (AR 944; see AR 936-43). At the hearing, plaintiff stated that she did the
18   therapy for just "a couple weeks" before stopping. (AR 116). She indicated that
19   her doctors had prescribed physical therapy as essentially her only treatment
20   option (aside from pain medications). (AR 114, 117). Plaintiff acknowledged that
21   the massages, which were part of the physical therapy, provided some relief. (AR
22   114). She stated that "[t]he exercises flare it up, so they do like really light
23   exercises."[5] (AR 114). According to the physical therapy provider, plaintiff was
24   discharged because she "did not follow up to continue with treatments." (AR
25   944). Considering that plaintiff discontinued this prescribed treatment after just a

26

27

28       [5]This statement arguably suggests that the "really light exercises" did not cause serious
     flaring up.

1  brief period in which she demonstrated some improvement and felt some relief,

2  the ALJ reasonably relied on this as a further basis to discount plaintiff's

3  testimony.[6] See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (in

4  discrediting the claimant's subjective symptom testimony, the ALJ may consider

5  "unexplained or inadequately explained failure to seek treatment or to follow a

6  prescribed course of treatment"); Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007)

7  ("Our case law is clear that if a claimant complains about disabling pain but fails

8  to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may

9  use such failure as a basis for finding the complaint unjustified or exaggerated.")

10 (citing Fair, 885 F.2d at 603).

11      Accordingly, plaintiff has failed to identify any material error in the ALJ's

12 evaluation of the her subjective testimony regarding her symptoms and limitations.

13 **V.      CONCLUSION**

14      For the foregoing reasons, the decision of the Commissioner of Social

15 Security is AFFIRMED.

16      LET JUDGMENT BE ENTERED ACCORDINGLY.

17 DATED:  May 19, 2020

18                                    /s/
                                  _____

19                                Honorable Jacqueline Chooljian
                                  UNITED STATES MAGISTRATE JUDGE
20

21

22

23

24

25
   _____

26      [6]The ALJ specifically stated that "physical therapy records reflect that [plaintiff] was

27 discharged from treatment, despite slight improvements with therapy, due to [plaintiff's] failure
   to follow up with treatment."  (AR 87) (citing AR 944).  The ALJ found that plaintiff's

28 "noncompliance with treatment is inconsistent with her assertions of disability."  (AR 87).